Magistrate Judge David W. Christel

```
_____ FILED _____ LODGED
         _____ RECEIVED
        Aug 04, 2025
     CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN HARDMAN, <br><br> Defendant. | CASE NO. 3:25-mj-05307 <br><br> COMPLAINT for VIOLATION <br><br> Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A) |

BEFORE the Honorable David W. Christel, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

**COUNT 1**

**(Conspiracy to Distribute Controlled Substances)**

Beginning at a time unknown, and continuing until on or about August 4, 2025, in Pierce, King, Snohomish, Lewis, and Island Counties, within the Western District of Washington, and elsewhere, JOHN HARDMAN and others known and unknown, did knowingly and intentionally conspire to distribute controlled substances, including:

Complaint - 1
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl), a substance
2  controlled under Title 21, United States Code.
3      It is further alleged that JOHN HARDMAN's conduct as a member of the
4  conspiracy charged in Count 1, which includes the reasonably foreseeable conduct of
5  other members of the conspiracy charged in Count 1, involved 400 grams or more of a
6  mixture or substance containing a detectable amount of fentanyl.
7      All in violation of Title 21, United States Code, Sections 846, 841(a)(1), and
8  841(b)(1)(A).

## COUNT 2

**(Possession with Intent to Distribute Controlled Substances)**

11      On or about August 4, 2025, in King County, within the Western District of
12  Washington, JOHN HARDMAN did knowingly and intentionally possess, with the intent
13  to distribute, controlled substances, including N-phenyl-N-[1-(2-phenylethyl)-4-
14  piperidinyl] propanamide (fentanyl), a substance controlled under Title 21, United States
15  Code.
16      It is further alleged that the offense involved 400 grams or more of a mixture or
17  substance containing a detectable amount of fentanyl.
18      It is further alleged that this offense was committed during and in furtherance of
19  the offense alleged in Count 1 (Conspiracy to Distribute Controlled Substances).
20      All in violation of Title 21, United States Code, Sections 841(a)(1), and
21  841(b)(1)(A).
22      And the complainant states that this Complaint is based on the following
23  information:
24      I, Daniel Richter, being first duly sworn on oath, depose and say:

### AFFIANT BACKGROUND AND EXPERIENCE

26      1.    I am a Special Agent of the Drug Enforcement Administration (DEA),
27  currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field

Complaint - 2
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Division. I am a criminal investigator of the United States within the definition of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 and Title 18 United States Code.

2. I have been a DEA Special Agent (SA) since August 2021. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

3. Prior to my employment with the DEA, I worked as a Uniformed Officer, Narcotics Detective, and Sergeant with the Michigan State Police from October 2012 to August 2021. Throughout my employment with Michigan State Police, I received numerous training courses focusing on narcotics investigations and narcotics identification. I obtained training through the DEA on clandestine manufacturing of methamphetamine, fentanyl, 4-Methylenediozymethamphetamine (MDMA), Phenyl cyclohexyl piperidine (PCP), and marijuana extractions.

4. During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include drug trafficking organizations linked to Mexico-based organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: confidential

Complaint - 3
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

informants; undercover agents; analysis of pen register and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

5. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a search warrant and pen register/trap and trace device, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## PROBABLE CAUSE

6. In September of 2022, the DEA began conducting a criminal investigation of a Mexican drug trafficking organization (DTO) operating out of Tacoma, Washington with ties to Nevada, Oregon, and California, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846. Agents believed this DTO and its members were responsible for distributing methamphetamine and cocaine in the Western District of Washington and elsewhere. As the investigation progressed, investigators identified two brothers, Rosario and Francisco CAMARGO BANUELOS, as leaders of the DTO who coordinated drug trafficking taking place in the Western District of Washington and elsewhere. The DTO

Complaint - 4
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

is referred to herein as the CAMARGO BANUELOS DTO.

7. On June 25, 2025, a Grand Jury in the Western District of Washington indicted several members of the CAMARGO BANUELOS DTO.

8. On July 30, 2025, a search warrant to search several locations related to the CAMARGO BANUELOS DTO was authorized including two residences associated with **John HARDMAN**, a house in Everett, Washington, where **HARDMAN** was suspected of receiving drug deliveries (Target Residence 4), and an apartment in Seattle, Washington, where he was known to reside (Target Residence 5). **HARDMAN** was identified as a drug redistributor based on judicially authorized wiretap interceptions in which **HARDMAN** had repeatedly ordered pound and kilogram quantities of drugs, including methamphetamine and fentanyl, as well as thousands of fentanyl pills, from Francisco CAMARGO BANUELOS, a known leader of the DTO based in Mexico.

9. Below is a summary of **HARDMAN's** involvement with the DTO including recent surveillance of **HARDMAN** as well as recent ongoing communications with DTO members.

### Interception of TT81

10. On June 16, 2024, at approximately 6:18 p.m., agents intercepted an outgoing call (session 402 over TT56) from the user of TT81 (believed to be **HARDMAN**) to DTO leader Francisco CAMARGO BANUELOS, the user of TT56. Based on review of financial information through law enforcement databases, agents have learned that **HARDMAN** has used TT81 in association with money transfers. Also, through a search of criminal records agents learned that **HARDMAN** has numerous controlled substance violation arrests throughout 1991-2018. Based on TT81 being linked to **HARDMAN** through financial information, and his criminal history, agents believe **HARDMAN** is the likely user of TT81.

11. I reviewed the call between **HARDMAN** and Francisco CAMARGO BANUELOS and based on my training, experience, and knowledge of this investigation,

Complaint - 5
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

I believe that during the call, **HARDMAN** and Francisco CAMARGO BANUELOS were attempting to set up a drug deal. Francisco CAMARGO BANUELOS stated, "but I have one for sure…for you…," which I believe was Francisco CAMARGO BANUELOS indicating that he would have a kilogram of an unknown drug available for **HARDMAN**. **HARDMAN** and Francisco CAMARGO BANUELOS discussed doing the deal "tomorrow," and **HARDMAN** said he had the money "at home." After this interception, **HARDMAN** cancelled the deal and advised they (**HARDMAN** and Francisco CAMARGO BANUELOS) could do it tomorrow. Francisco CAMARGO BANUELOS confirmed that tomorrow was fine.

12. On June 17, 2024, agents intercepted an outgoing text to **HARDMAN's** TT81 from Francisco CAMARGO BANUELOS, the user of TT56, stating "I have a half right now" and saying that he would call "when I have more." **HARDMAN's** TT81 replied, "P okay that will work." Francisco CAMARGO BANUELOS later texted, "In the afternoon I will have a whole one for you."

13. Later that evening, agents intercepted a text from the **HARDMAN's** TT81 to Francisco CAMARGO BANUELOS, reading, "5915 seahurst avenue, Everett Washington" (the address of Target Residence 4). Francisco CAMARGO BANUELOS texted back, "There ?" TT81 then texted, "Yes" and Francisco CAMARGO BANUELOS then texted, "20 minutes."

14. Shortly thereafter, agents intercepted an outgoing call from Francisco CAMARGO BANUELOS to GARCIA OLAIS, the user of TT80 and a known drug distributor for Francisco CAMARGO BANUELOS. During the call, GARCIA OLAIS and Francisco CAMARGO BANUELOS discussed the location where GARCIA OLAIS was supposed to meet with what CAMARGO BANUELOS described as an older white guy named "John" (consistent with **HARDMAN's** name and description), then told GARCIA OLAIS to "count the money" which he described as "15 balls," and directed GARCIA OLAIS not to hand off anything until he had done the counting.

Complaint - 6
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

15.   Based on my training and experience, knowledge of this investigation, I believe that initially, **HARDMAN** and Francisco CAMARGO BANUELOS were coordinating a drug deal on June 16, 2024, but then rescheduled it for June 17, 2024. Then on June 17, 2024, through numerous back and forth communications between TT81 and Francisco CAMARGO BANUELOS, it appeared that Francisco CAMARGO BANUELOS had a "whole one" for **HARDMAN**. The term "whole one" often refers to a kilogram of drugs. Then, later into the evening, **HARDMAN** sent the address for Target Residence 4 to Francisco CAMARGO BANUELOS, and Francisco CAMARGO BANUELOS then dispatched a local distributor to meet with **HARDMAN** at Target Residence 4.

16.   Furthermore, based on the intercepted call with GARCIA OLAIS, around the time that Francisco CAMARGO BANUELOS and **HARDMAN** had communicated, it appeared that Francisco CAMARGO BANUELOS was giving instructions to GARCIA OLAIS to meet with **HARDMAN**. Francisco CAMARGO BANUELOS mentioned to GARCIA OLAIS to "Count the money please. Fifteen balls. Count, count it correctly, and then you give it to him. Don't hand off anything until you counting you already know?" Based on this, I believe that Francisco CAMARGO BANUELOS was charging **HARDMAN** $15,000 for a kilogram of drugs and instructing GARCIA OLAIS to count the money before GARCIA OLAIS handed over the drugs to **HARDMAN**.

### June 19, 2024, Interceptions/Surveillance

17.   On June 19, 2024, starting at approximately 10:48 a.m., agents intercepted numerous incoming/outgoing text messages **HARDMAN's** TT81 and Francisco CAMARGO BANUELOS, the user of TT56. The text messages were in English and transcribed by DEA linguists.

F. CAMARGO BANUELOS:   Brother

F. CAMARGO BANUELOS:   I have blues

F. CAMARGO BANUELOS:   Brother

Complaint - 7
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | F. CAMARGO BANUELOS: | I have blues |
| 2 | **HARDMAN**: | Yes I need some |
| 3 | **HARDMAN**: | 2000 |
| 4 | F. CAMARGO BANUELOS: | Where |
| 5 | F. CAMARGO BANUELOS: | Brother |
| 6 | F. CAMARGO BANUELOS: | Brother |
| 7 | F. CAMARGO BANUELOS: | Where |
| 8 | **HARDMAN**: | I need two boats and I have your $500 I'm at the hotel same room I'll give you the address again |
| 11 | **HARDMAN**: | 3021 196th Street Lynnwood extended stay hotel room 213 |
| 13 | F. CAMARGO BANUELOS: | Ok brother |
| 14 | F. CAMARGO BANUELOS: | 3 mins |
| 15 | **HARDMAN**: | Okay thank you I gave him the 500 also |
| 16 | F. CAMARGO BANUELOS: | Thanks bro |

18. At approximately 7:37 p.m., surveillance observed TV12 park in the lot of the Extended Stay America located at 3021 196th St SW, Lynnwood, WA. Shortly after, surveillance observed a male, later identified as BONEO NIEBLAS, walking away from the lobby entrance toward TV12.

19. Based on the interceptions between **HARDMAN** and Francisco CAMARGO BANUELOS, I believe that **HARDMAN** placed an order of 2,000 fentanyl pills. Surveillance then observed a well-known drug distributor (BONEO NIEBLAS), who works for the DTO, arriving at the same location that **HARDMAN** had sent Francisco CAMARGO BANUELOS. Furthermore, **HARDMAN** then sent, "Thanks bro" to Francisco CAMARGO BANUELOS, which further indicates to investigators that **HARDMAN** received his order of drugs.

Complaint - 8
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**June 21, 2024, Intercepts/Surveillance**

20. On June 21, 2024, agents intercepted numerous text messages between **HARDMAN's** TT81 and TT56, used by Francisco CAMARGO BANUELOS. During the texts, **HARDMAN** asked, "Can I get 4,000 blues," and "do you have any water." Francisco CAMARGO BANUELOS said, "I have Only water bro," and asked if **HARDMAN** needed "pounds," and **HARDMAN** replied, "1 lb." Francisco CAMARGO BANUELOS asked, "Where ?" and **HARDMAN** again sent the address "5915 seahurst avenue Everett Washington" (Target Residence 4).

21. About three hours later, surveillance observed TV14 (being driven by GARCIA OLAIS) arrive at Target Residence 4. Approximately five minutes later, surveillance observed TV14 leaving the driveway.

22. Based on these interceptions between **HARDMAN** and Francisco CAMARGO BANUELOS, I believe **HARDMAN** placed an order of one pound of methamphetamine and that GARCIA OLAIS, a known drug distributor for the DTO, delivered the drugs to Target Residence 4.

**July 6, 2024, and July 7, 2024, Interceptions and Surveillance**

23. On July 6, 2024, and July 7, 2024, agents intercepted numerous text messages between **HARDMAN's** TT81 and Francisco CAMARGO BANUELOS, the user of TT56. In these text messages, Francisco CAMARGO BANUELOS mentioned "Fetty," **HARDMAN** asked, "Is it good," and said, "I we'll take two if it's good." **HARDMAN** asked, "Can we do it first thing in the morning," and Francisco CAMARGO BANUELOS said he would call **HARDMAN** at noon. **HARDMAN** then texted, "Are you getting blues too? And water I'm out of everything," and Francisco CAMARGO BANUELOS texted, "I will have fett, and in a couple of days I will have blue." **HARDMAN** again texted "5915 seahurst avenue Everett Washington" (the address of Target Residence 4). Francisco CAMARGO BANUELOS texted the price of "$16k each." Later in an intercepted phone call, Francisco CAMARGO BANUELOS

Complaint - 9
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

told **HARDMAN** that "the guy" would be there in ten minutes, and that it was the "same guy," but he would be in a "different car."

24. Based on my training, experience, and knowledge of this investigation, I believe the interceptions between **HARDMAN** and Francisco CAMARGO BANUELOS, indicate **HARDMAN** placed an order for two kilograms of fentanyl. The price given by Francisco CAMARGO BANUELOS of "$16k each" which at the time, correlated correctly to a kilogram of fentanyl, further shows that Francisco CAMARGO BANUELOS and **HARDMAN** were talking about kilogram quantities. Additionally, when Francisco CAMARGO BANUELOS mentioned "blocks" as a form of measurement to **HARDMAN**, I believe that was used as a slang/street jargon term of a kilogram based on the shape/packaging that is often used with kilogram quantities of powdered drugs. **HARDMAN** then gave Francisco CAMARGO BANUELOS the address of Target Residence 4 for the meeting location. Francisco CAMARGO BANUELOS then confirmed the order with **HARDMAN** and mentioned in the "same guy" (apparently referring to GARCIA OLAIS) would be coming in a "different car."

25. During the time of the planned delivery for this, I observed that TT80 (utilized by GARCIA OLAIS) traveled from the Shoreline, WA, area directly to the area of Target Residence 4. Based on this and the intercepted communications between Francisco CAMARGO BANUELOS and **HARDMAN**, I believe that **HARDMAN** purchased two kilograms of fentanyl at Target Residence 4 during this meeting.

**Additional Observations related to Target Residence 4/HARDMAN**

26. On April 14, 2025, I conducted a review of historic tracking data related to the known distributors in Western Washington, including the vehicles TV12 and TV18, known to be used by BONEO NIEBLAS, a known drug distributor for the DTO.

27. On August 10, 2024, location data shows TV12 traveled from BONEO NIEBLAS's AirBnB address in Mill Creek, WA, to Target Residence 4. I observed that TV12 was parked at the residence for approximately seven minutes before departing.

Complaint - 10
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

28. On August 24, 2024, location data shows TV12 traveled from BONEO NIEBLAS's Portland, OR, rental to Target Residence 4. I observed that TV12 was parked at the residence for approximately 30 minutes around 12:40 a.m. and briefly around 2:11 p.m.

29. On April 3, 2025, I observed TV18 traveled from Seattle, WA, to Target Residence 4. I observed that TV12 was parked at the residence for approximately fifteen minutes before departing.

30. Additionally, I observed that TT80 has been in contact with TT103 (another phone number for Francisco CAMARGO BANUELOS) 198 times during the period of February 15, 2025, to April 22, 2025.

**Surveillance on May 5, 2025**

31. On May 5, 2025, at approximately 4:00 p.m., SA Kewley initiated surveillance on Target Residence 4. At approximately 4:26 p.m., SA Kewley observed a small gray passenger car enter the driveway to Target Residence 4. The vehicle was being driven by a female, and nobody else was in the vehicle. At approximately 4:28 p.m., SA Kewley observed the same vehicle exit the driveway and leave the area. SA Kewley observed that the vehicle was still only occupied by the unknown female.

32. Based on my training, experience, and knowledge of this investigation, I believe that this female likely picked up drugs from Target Residence 4. The unknown female arrived at the residence for two minutes and quickly left, which is often indicative of a drug deal. Based on my knowledge that **HARDMAN** had been regularly ordering drugs from the DTO to this location and had been in contact with Francisco CAMARGO BANUELOS near the time of the surveillance, it is likely that he also distributes drugs from this location. Considering that the female arrived at the address alone, and left alone, it is likely that she purchased controlled substances.

**Surveillance on May 28, 2025**

33. On May 28, 2025, at approximately 11:00 a.m., I initiated surveillance on

Complaint - 11
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Target Residence 4. At approximately 12:00 p.m., I observed a black Dodge Durango
2  exiting the driveway of Target Residence 4 and began conducting surveillance on the
3  vehicle. I observed that the vehicle was being driven by a white male as it exited the
4  driveway to Target Residence 4. As I continued surveillance on the vehicle, I observed
5  through the driver's side rear view mirror that the driver was **HARDMAN**. I observed
6  **HARDMAN** went to a nearby Walgreens. I observed **HARDMAN** exit the store shortly
7  after with a bag in hand. **HARDMAN** then left the area in the black Dodge Durango, and
8  surveillance was terminated.

### Additional Toll Analysis on HARDMAN

10  34.  On June 17, 2025, I conducted toll analysis on **HARDMAN's** TT81. I
11  observed from March 2025 through June 2025, **HARDMAN** has had 197
12  communications with Francisco CAMARGO BANUELOS over TT103.

13  35.  Based on agents continued surveillance seeing vehicles do "short stays" at
14  Target Residence 4, and **HARDMAN's** extensive communications with Francisco
15  CAMARGO BANUELOS, I believe that **HARDMAN** is continuing to purchase
16  controlled substances from the DTO and will continue to have controlled substances
17  available on hand for distribution to his customer base.

### Authorization of Ping/Pen on TT81

19  36.  On June 2, 2025, United States Magistrate Judge Theresa L. Fricke signed
20  an order allowing for GPS tracking related to TT81. On the same date, agents began
21  receiving location data related to TT81.

### Location Data Related to TT81

23  37.  Based on location data related to TT81, I observed that the device was
24  around Lake City, WA, more specifically near the Parkwood Apartments. I immediately
25  recognized this area, as prior review of historical location data related to TT110 (known
26  to be used by BONEO NIEBLAS) showed that, on June 16, 2025, TT110 traveled to this
27  same area briefly. At the time that TT110 was observed in this area, I was unsure who he

Complaint - 12
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

had likely met with. Once observing that TT81 was in this same area, I reviewed toll data related to **HARDMAN's** TT81 on June 16, 2025, and observed that TT81 had numerous calls incoming from TT103 (used by Francisco CAMARGO BANUELOS). These incoming calls happened around the same time that TT110 displayed it was traveling through Shoreline, WA toward the Lake City, WA area, where Target Residence 5 is located.

38. Based on my training, experience, and knowledge of this investigation, I believe that BONEO NIEBLAS, a known drug distributor for Francisco CAMARGO BANUELOS, likely distributed controlled substances to **HARDMAN** around Lake City, WA.

**Electronic Surveillance on TV21 and toll analysis on TT81**

39. On July 22, 2025, TV21 (known to be used by BONEO NIEBLAS) was observed traveling from his residence area in Seattle, WA to the parking lot at the northwest corner of Lake City Way NE and NE 125th St in Lake City, WA (approximately one mile from Target Residence 5). During this same time, TT81 was displaying just north of this area at NE 140th St. TV21 remained in this parking lot for approximately ten minutes and then departed.

40. During review of toll analysis for TT81 on July 12, 2025, I observed **HARDMAN's** TT81 had numerous communications with TT103 (used by Francisco CAMARGO BANUELOS) around the same time that BONEO NIEBLAS was in the parking lot at Lake City, WA.

41. Based on my training, experience, and knowledge of this investigation, much like previously observed meetings, I believe that **HARDMAN** coordinated a drug purchase with Francisco CAMARGO BANUELOS, who then directed BONEO NIEBLAS to meet with **HARDMAN** to fulfill that drug order.

Complaint - 13
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

42. In another instance, on July 20, 2025, TV21 traveled from Seattle, WA area to Lake City, WA. This time, TV21 was observed parking near Target Residence 5 at the Parkwood Apartments, the same area where TT81 was located.

43. During review of toll analysis for TT81 on July 20, 2025, I observed TT81 had numerous communications with Francisco CAMARGO BANUELOS' TT103 around the same time that BONEO NIEBLAS was in the parking lot at Lake City, WA.

44. Based on my training, experience, and knowledge of this investigation, much like previously observed meetings, I believe that **HARDMAN** coordinated a drug purchase with Francisco CAMARGO BANUELOS, who then directed BONEO NIEBLAS to meet with **HARDMAN** to fulfill that drug order.

### Surveillance on HARDMAN on July 21, 2025

45. On July 21, 2025, at approximately 12:44 p.m., I observed that TT81 was located near the Parkwood Apartments. I drove by the area and observed that **HARDMAN** was in the front passenger's seat of a vehicle with another unknown white male.

46. Shortly thereafter, **HARDMAN** was observed exiting the vehicle and walking behind the Parkwood Apartments. I observed **HARDMAN** crouching down and crawling through a window of a ground level apartment.

47. I then walked the area and confirmed that the apartment **HARDMAN** entered was Apt 16 (Target Residence 5).

48. Through a search of open-source information, DEA intelligence analysts found **HARDMAN** was associated with 3200 NE 140th St Apt 16, Seattle, WA (Target Residence 5) through bank account records.

49. On the same day, I continued to monitor location data related to TT81. At approximately 2:51 p.m., I observed that TT81 left the area of Target Residence 5, and traveled north, likely on Interstate-5. I continued to monitor data related to TT81 and observed that it traveled directly to the area of Target Residence 4.

Complaint - 14
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**Execution of Search Warrants on Target Residence 4 and Target Residence 5**

50. On July 30, 2025, United States Magistrate Judge Theresa L. Fricke signed search warrants for Target Residence 4 and Target Residence 5.

51. On August 4, 2025, agents executed the search warrants on the residences associated with **HARDMAN**, Target Residence 4 and Target Residence 5. **HARDMAN** was present and detained at Target Residence 5. At that location, agents recovered suspected fentanyl powder from the oven located in **HARDMAN's** kitchen, along with approximately $50,000 in cash, which was located in a bedroom. Agents photographed the suspected fentanyl and money (pictured below).



//
//

Complaint - 15
United States v. John Hardman
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800



52. The suspected fentanyl pictured in the photograph above was weighed and field-tested by agents, testing positive for fentanyl with a gross weight of 1.44 kilograms (including packaging).

53. **HARDMAN** was detained and questioned by agents. **HARDMAN** was provided his *Miranda* warnings. **HARDMAN** admitted to purchasing fentanyl regularly **HARDMAN** further admitted to having purchased fentanyl in the days leading up to the execution of the search warrant.

## CONCLUSION

54. Based on the above facts, I believe probable cause exists that **John HARDMAN** did knowingly and intentionally conspire to distribute fentanyl and did possess with intent to distribute fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

DAN RICHTER, Complainant
Special Agent
Drug Enforcement Administration

Complaint - 16
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Based on the Complaint and Affidavit sworn to me via reliable electronic means, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

Dated this 4th day of August, 2025.

_____
DAVID W. CHRISTEL
United States Magistrate Judge

Complaint - 17
*United States v. John Hardman*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800